## Case No. 2,061.

### Ex parte BRYAN.

### In re MAJOR.

[2 Hughes, 273; 14 N. B. R. 71; 23 Pittsb. Leg. J. 196.][1]

District Court, E. D. Virginia. April 12, 1876.[2]

BANKRUPTCY—APPOINTMENT OF ASSIGNEE — SALE BY ASSIGNEE—AUTHORITY TO ORDER — INVALID ORDER—CONFIRMATION—SETTING ASIDE.

1. Disputed interests of the bankrupt cannot be sold under section 25 of the general bankruptcy act,—[14 Stat. 528] section 5063, Rev. St., —except by order of court, after personal notice to the adverse claimants of the disputed interests.

2. Where the assignee's petition for the private sale of such an interest, an order by the register for such a sale, and the assignee's report of the sale, are all made on the same day, held, that the order is void and the sale a nullity.

3. Held, also, that this section of the bankruptcy law intrusts the court, and the court alone, with discretion whether to sell or not, and, if determining to sell, intrusts the court, and the court alone, with discretion as to the period of notice to be given to those claiming adversely.

[Cited in Re Sims, Case No. 12,888; Re Palmer, 13 Fed. 870.]

4. Held, also, that notice of the petition for the sale of such an interest must be given, personally, to those claiming adversely, and that the sale must be public and after public notice.

5. Where an illegal order of sale has been made by a register, and the report of sale under it has been approved by the register, without opportunity being given for exceptions, and the order and the report of sale have been withheld from being filed for six weeks after these transactions, held, that indorsements upon the order and the report of sale of the word "Approved," signed by the judge, made some time during the six weeks, which were never treated by the clerk as memoranda for orders of confirmation, do not constitute and are not orders of confirmation.

6. Held, also, that though the confirmation had been regular, such an order of the register being void, cannot by confirmation be made valid, nor can the sale under it be made valid.

7. Held, also, that such a sale being null and void, the bankruptcy court has jurisdiction to declare it so, as well against the purchaser from the assignee as against persons to whom the purchaser has assigned his interest, if those persons be brought in by petition. A plenary bill is not necessary to bring in such persons.

[Cited in Re Sims, Case No. 12,888; Re Palmer, 13 Fed. 870.]

8. General orders appointing assignees in large classes of cases were not contemplated by the 13th section of the general bankruptcy act. Rule 9 now expressly forbids them.

9. Such a general order. if valid at all, must at least have enumerated the cases in which the assignee was intended to be appointed.

10. Unless an assignee, who has been appointed by such an order, qualifies especially, as required by the 13th section, in each particular case, he cannot be treated by the court as assignee in any such case.

11. But, if a person, acting without regular authority as an assignee, is treated as to any particular act by the court as such, that particular act is to be accepted as valid so far as the competercy of the assignee is concerned, being similar in character to the acts of an executor de son tort.

In bankruptcy. The case is heard upon the petition of Joseph Bryan, assignee, praying the court to declare null and void a sale made by [J. Ambler Smith] a preceding assignee, of certain interests of the bankrupt in the estates of his father, William Major, Sr., and of two sons deceased [and also upon the joint petition of William Major, the bankrupt, and John C. Major, for the like purpose. The court dismissed the petition of the Majors, and allowed the assignee to amend his petition by adding other parties].

The following are the facts of the case as shown by the record: William Major was, on the 10th of November, 1868, on his own petition, adjudicated a bankrupt. He surrendered no property. He alleged in his schedule that all of his property, real, personal, and mixed, had been conveyed to a trustee for the benefit of his creditors, by a deed dated May 4th, 1858, and that he had no other property than what had been then disposed of. It would seem, from sundry averments in the pleadings, that he had a valuable interest in the estate under the will of his father, William Major, Sr., either directly or derived through two deceased sons who had themselves been devisees or dis-

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission. Syllabus, only, in 23 Pittsb. Leg. J. 196.]

[2] [Affirmed by circuit court (case not reported).]

tributees of their grandfather. The papers in the cause do not define what that interest was or is, but it seems to have accrued to him several years after making his trust deed of 1858, and as many years before his adjudication in bankruptcy. It seems, further, from the averments in the pleadings, that his right to this interest in the devises or legacies of his father's will has been, within a few years past, made the subject of litigation in the circuit court of Culpeper, where a decree has been rendered favorable to his rights; that there has been an appeal from this decree to the court of appeals of Virginia, where the appeal is now pending; and that the interest, which is the subject of such litigation, is of the value of from six thousand dollars to ten thousand dollars. The bankrupt made no mention of this interest in his schedule, and it seems, from the averments in the pleadings, that John C. Major, his brother, is the or is a representative of their father's estate, and is also a creditor of William Major, the bankrupt, to the extent of some six thousand dollars. The charge of those who are defending the petitions now heard, is, virtually, that John C. Major and William Major concerted with each other in concealing from this court the fact of William Major's interest in their father's estate; that William Major did so by omitting to include this interest in his schedule of assets, and that John C. Major did so in omitting to prove his debt in bankruptcy, and that they both did so in order to prevent an inquiry by this court after the said interest. Both John C. Major and William Major took legal counsel as to that interest, receiving as the opinion of the counsel consulted, that the interest was not recoverable; and it is implied, if not stated by them in the pleadings, that it was in consequence of having had such advice that William Major omitted to mention this interest in his schedule, and that John C. Major declined to prove in bankruptcy his own claim against his brother. It seems that his rights in his father's estate were enough a question with William Major to induce him to consult with legal counsel, but not enough a question to suggest the propriety of mentioning them in his schedule. Lewis E. Higby was the first assignee of this bankrupt's estate, the register's assignment to him having been made on the 12th of December, 1868. On the 1st of October, 1869, Higby, the assignee, entered into a written agreement with L. R. Spilman, by which he employed Spilman's law firm, of Spilman & Blackwell, as his counsel to prosecute to recovery "the doubtful interest of the bankrupt in the estates of his father, mother, and brothers, Wingfield S. and Samuel Major, all deceased," by which the assignee agreed to allow to these counsel, for their services, one-half of anything they might recover, they paying all costs and charges of any suits or other proceedings which they might institute, and by which the assignee also authorized these counsel to make any settlement they might deem best for the assignee with any party indebted to the bankrupt. Early in 1871, Higby, who was assignee in bankruptcy in several hundred bankruptcy cases in this court, resigned his trust in all of the cases, left the state, and soon after died. On the 15th of April, 1871, the then judge of this court made a general order, appointing J. Ambler Smith, assignee "in all the cases in which said Higby had acted up to that date," and requiring Smith to give a bond satisfactory to the clerk or register, in the sum of five thousand dollars, for the faithful performance of duties as such assignee in the cases aforesaid; the order being a brief one, and containing no mention by name of any one of the cases in which it was intended that Smith should act. Smith filed a general bond, but did not qualify specially in any one of the cases contemplated by this general order, according to the manner required by the 13th section of the general bankruptcy act. There was no publication made by Smith of his appointment, either general or special. There was nothing in the record of any of those cases, for some time after the order was made, to show, directly or by reference, who was the assignee in such case; and there was nothing in much the larger number of cases as late as January, 1874 (when the present judge was commissioned), to give the party to those proceedings any information of the identity of the assignee.

On the 2d of September, 1873, the said J. Ambler Smith, acting as assignee, presented a petition to the register, addressed to the then judge of the court, praying for leave "to sell by public or private sale the claim of the bankrupt against his father's estate and the estates of his brothers, Wingfield S. and Samuel Major, disputed by the executor of his father and his brother Samuel, and by the administrator of Wingfield S. Major." On this same day (2d September, 1873), the register at Richmond made an order authorizing "a public or private sale of the claims aforesaid," pursuant to the prayer of the petition. On the same day (2d September, 1873), the said Smith made a report addressed to "The Honorable, the District Court of the United States for the Eastern District of Virginia," which he presented to the register, setting forth that "he had sold by order of the said district court, entered on the 2d of September, 1873, the entire interest of said bankrupt in the estates of his father, William Major, Wingfield S. Major, and of Samuel Major, to L. R. Spilman, for the sum of fifty dollars, which sum he has paid to me." The petition of Smith as assignee, the order made by the register, and the report made by Smith, are all in the handwriting of Spilman, and, as before stated, are all dated on the same day. The report of the sale was marked "Approved" by

the register on the same day (2d September, 1873). The order of the register authorizing the sale is indorsed as follows, in the hand-writing of the late judge, viz.: "The within order of Register Forbes is approved, October 8th, 1873." The report of Smith as assignee is marked by the same judge "Approved, October 8th, 1873." Neither one of these indorsements indicates the place at which they were made, whether in the district or out of it. But they certainly were not made in court; for the papers containing them were not filed with the clerk until the 22d of October, 1873, seven weeks after the register's order and the sale by the assignee were made, and two weeks after the judge had marked them "Approved." The clerk of the court did not treat these indorsements by the judge as memoranda for orders confirming the sale; for no such order was made out, certified, and put into the record by the clerk. No notice was given of the intended sale or of the petition for leave to sell, or of the order of the register, to the adverse claimants of what was to be sold; no opportunity was given for exceptions to any party or person; but the petition, order, and report were neither of them in the record for more than thirty days after the sale. It further appears by the averments in the pleadings, that Spilman sold his interest in the estates of the Majors, which he claims to have purchased from Smith, as assignee, to Joseph N. Armstrong, for a valuable consideration; that he and Armstrong, or Armstrong alone, made contract with James W. Green, Esq., as counsel, by which that gentleman was engaged to sue for and recover the interests in question, upon a stipulation that he should have one-third of the recovery; and it is suggested that Mr. Green's success in making recovery of these claims is now quite probable. On the 18th of October, 1875, John C. Major made oath to a formal claim in bankruptcy against the estate of this bankrupt, for six thousand and four dollars, as of the 9th of September, 1870; and on the 3d of January, 1876, he filed his claim in the record of this cause. And now come John C. Major and the bankrupt, and file here a joint petition, setting forth some of the matters which have been stated above, denying the validity of the sale made by Smith, as assignee, to Spilman, on the 2d of September, 1873, on various grounds, and praying that the said sale may be declared null and void, and all orders connected therewith be set aside. On the 2d of March, 1876, Joseph Bryan was appointed by the court assignee in this cause, and on the same day he signified his acceptance, and entered into bond as such. He now comes by petition, averring many of the matters that have been recited above, charging that the sale of 2d September, 1873, was null and void, and praying that the same shall be so declared, and that the bankrupt may be required to subject himself to examination, as

to his true interests in the estates that have been described. Both of the petitions made Spilman defendant, who answered, insisting upon the validity of the sale of September 2d, 1873.

M. M. Gilliam, for present assignee.

A. H. Sands, for purchaser from former assignee.

HUGHES, District Judge. As to the joint petition of the two Majors, it may as well be dismissed, and I will so order. John C. Major's proof of claim places him before the court as a creditor of the bankrupt, as favorably as his petition can do, and, William Major's claim for exemptions may as well be made by the usual methods observed in the practice of the court. Practically, therefore, I am called upon now to do no more than to pass upon the validity of the alleged sale of the 2d of September, 1873, upon the petition of Joseph Bryan, the assignee.

First: As to the question whether Smith was in fact the assignee. It is obvious from the terms of the 13th section of the general bankruptcy act, that no general order, appointing in brief terms a named person as assignee in a class of many cases, was ever contemplated by the framers of the section. Rule 9 now expressly forbids such orders. Unless a general order shall at least enumerate the particular cases in which the person is intended to be appointed, it must be invalid. This irregularity in the general order making Smith assignee in Higby's cases, could only have been cured by Smith's filing a written acceptance of the trust in each case, and otherwise recording in each case the evidence of his qualification as assignee. Yet nothing of the sort was done by him in this case of William Major. I have repeatedly held, for now more than two years, that I would not recognize the validity in any case of the general order in question, made by the then judge of this court, on the 15th of April, 1871, unless the appointee shall have qualified specially in such case, by complying with the requirements of section 13, especially if he had done no act or acts as assignee. This appointee, Smith, has himself explicitly disclaimed being the assignee in nearly all the several hundreds of cases embraced by the general order of the 15th of April, 1871, by reporting himself to the attorney-general of the United States, under the amended bankruptcy act of the 22d of June, 1874 [18 Stat. 178], to be assignee only in six of those cases, of which this of William Major is not one. He has recently disclaimed being assignee in this case, in express terms. He therefore is not now and never was the legal assignee. While, however, all this is so, yet it is clear that Smith acted as assignee in the remarkable transaction of the 22d of September, 1873, and was recognized and held out as such, both by the register and the judge. His action in that particular matter therefore must be recog-

nized as the act of the assignee; though it had very much the character of the act of an executor de son tort. I am bound to consider him to have been the assignee pro hac vice; but in this case I can of course do so only as to that single transaction.

Treating Smith as the assignee, the question recurs upon the validity of the sale. Section 25 of the general bankruptcy act (now section 5063 of the United States Revised Statutes), requires that where the title to any portion of an estate, real or personal, which is claimed by the assignee, is in dispute, the court may, upon the petition of the assignee, and after such notice to the party in adverse interest as the court shall deem reasonable, order it to be sold. The court, and the court alone, is intrusted with discretion whether to sell or not; and, if determining to sell, the court, and the court alone, is intrusted with discretion how long the notice, which the section requires to be given, shall be. The sale of such an interest of the bankrupt as this law describes is allowed to be made even by the court, only after such notice to those claiming adversely as the court in its discretion may deem proper. Of all the persons likely to purchase such an interest, those claiming adversely to the bankrupt would be the ones most apt to bid a liberal price, and the section requires that personal notice shall be given to them. In making it the duty of the court to consider of the propriety of selling, and of the length of notice to be given to adverse claimants, the section intrusts it with a discretion which none but the court itself can exercise, which can be delegated to no officer of the court, and which no officer but the court itself can exercise. The intendment of the law also requires that such a sale shall be public after public notice. It is almost useless to say, therefore, that the order of the register of the 2d of September, 1873, authorizing a private sale without notice, is such an order as the court itself could not have made; was without authority of law; was expressly contrary to law; was illegal in its terms; and was, therefore, wholly null and void. It was made by an officer having no authority to make it. It was made without any notice or possibility of notice, personal or by publication, to those claiming adversely. It was illegal in authorizing a private sale. The order was no better than waste paper, and the sale itself being founded upon an illegal, void order, is itself a nullity. It had also the further fault of having been made in contravention of the agreement between the assignee, Higby, and Spilman, on the 1st of October, 1869. No subsequent confirmation by the judge could make vital and valid an order wholly unauthorized by law, contrary in its terms and provisions to express law, and radically void. The sale made in pursuance of such an order is as incurable a nullity as the order itself; and no confirmation of it by the court could give it validity.

It is therefore, useless to consider whether Spilman could become purchaser in contravention of the agreement between himself and Higby, on the 1st of October, 1869. It is useless to consider whether the court would countenance a private sale, made by a subsequent assignee, to the counsel who had been charged by his predecessor with the duty of suing for the recovery of the property which that counsel now purchased from a vendor acting in the dark, whom it was his professional duty to enlighten. The private order of the register, the private sale made by Smith, as assignee, the haste and looseness of the transaction, its gross illegality, especially in both the order and the sale being made without notice to the very persons who would have been most likely to have bid most liberally for the property, and the fact of the purchaser being the very person who had been intrusted with the duty of obtaining accurate knowledge of the value of the property, all these circumstances make this transaction one which the court cannot countenance, and is bound to repudiate. Neither the order nor the sale was in fact confirmed by the court. Both seem simply to have been "approved" by the judge; but the approval in each instance was private, and did not become a part of the record for seven weeks after the sale, and for two weeks after the approval. Such an approval cannot be regarded as a confirmation by the court. It was as private, ineffectual, and void as the illegal order of the register, and the spurious sale by the so-called assignee. But even if the confirmation itself had been regular and unassailable, it could not give effect to a sale made under a void decree. See Ror. Jud. Sales, §§ 474, 483, 484, 486, and cases cited, and also Shriver v. Lynn, 2 How. [43 U. S.] 43; Morris v. Hogle, 37 Ill. 150; Shelton v. Tiffin, 6 How. [47 U. S.] 163; Hawkins v. Hawkins, 28 Ind. 66. The register had no jurisdiction to make an order for the sale of the property at all; and if he had, the order was illegal in being contrary to the requirements of the 25th section of the general bankruptcy law. A purchaser at a judicial sale made under a void decree is bound by the rule of caveat emptor to look to the jurisdiction of the court and the legality of the decree and proceedings from which it arose. He purchases under a void decree at his peril, and a subsequent confirmation, though ever so regular in itself, cannot help him.

As to the objection that it is incompetent for the bankruptcy court to set aside an order in the bankruptcy proceeding, as against persons not originally parties to the proceeding, claiming under the order by assignment from the purchaser, it cannot be sustained. It seems that in this case Spilman has assigned his right purchased under the void order in question, to Armstrong, and it is insisted that the bankruptcy court cannot affect Armstrong's right by declaring null

and void an order purporting to be its own order, but that the assignee must go into the district court, as a court of chancery, and proceed by bill against Spilman, Armstrong, and all subsequent purchasers from or contractors with Armstrong. Nothing of this is true as to a void order, for that would be virtually to hold that a purchaser, under a spurious sale, made under an illegal order of court, may assign away the jurisdiction of the court, which is a pretension that cannot be entertained. It is very true that strangers to the proceeding in the bankruptcy court, having claims against the assets in bankruptcy, not derived directly or indirectly through the orders of the court, must be proceeded against by plenary suit on the common law or chancery side of the district court; but the bankruptcy court has undoubted power to declare null and void any order falsely purporting to be an order of the court as against all persons claiming under the order itself. I do think, however, that the assignee here, Mr. Bryan, should have made both Armstrong and Green parties to his petition.

I will enter an order dismissing the petition of John C. Major and the bankrupt, and giving leave to the assignee to amend his petition, with a view to making the persons just named parties defendant, so that they may have opportunity of being before the court when the order is entered, declaring the proceedings of 2d September, 1873, null and void. I do not see that I can interfere with the contract made between Higby and Spilman, on the 1st of October, 1869, unless some special proceeding be instituted for setting it aside on the ground that it was virtually cancelled by the proceedings of 2d September, 1873.

NOTE [from original report]. The decrees of the district court, based on the principles of the foregoing opinion, were affirmed by the chief justice, on petition for revision [unreported].