(Hamilton County Common Pleas.)

THE CINCINNANI & KENTUCKY SOUTHERN RAILROAD COMPANY, a corporation under the laws of Kentucky, v. THE CINCINNATI, NEW ORLEANS & TEXAS PACIFIC RAILWAY COMPANY, a corporation.

(1). A receiver acts under orders and directions of the court, and the only title or property he can convey is that ordered by the court to be sold; therefore, should he include in the sale property not ordered sold, and such sale is afterwards confirmed by the court, is must be considered as being confirmed inadvertently.

(2). A railroad which had a contract with another railroad regulating freight traffic between them, was ordered sold on foreclosure, the order of sale ordering the receiver theretofore appointed to sell the road "with all appurtenances", etc., but not mentioning the contracts of the road with other railroads. Held, (1) such contract was not an appurtenant to the railroad.

(3). The receiver in selling the road also sold its rights under the contract with the other railroad, and such sale was confirmed by the court. Held, that the order of sale by the court not embracing such contract, the sale thereof by the receiver was unauthorized and void, and the confirmation of such sale by the court must be considered as inadvertently made, and did not give such sale validity.

---

DAVIS, J.
The plaintiff alleges that on the 23d

day of July, 1885, the Cincinnati & Green River Railroad Company entered into a written contract with the defendant herein, whereby the said Cincinnati & Green River Railroad Company agreed to deliver to the defendant herein, at its depot station, King's Mountain, state of Kentucky, so far as it legally might, all business originating at any and all stations on the line of the railroad of the said the Cincinnati & Green River Railroad Company, including business for Cincinnati, Nashville, Louisville, Lexington, Chattanooga and all points reached beyond, by passing through said cities; that the freight rates to Kings' Mountain station on the line of the railroad of the Cincinnati & Green River Railroad should be the same as the rates to and from stations adjacent to King's Mountain station on the line of the defendant herein.

It was further agreed, in said contract, that for all freight furnished the Cincinnati & Green River Railroad Company should receive fifteen per cent. of the proportion accruing to the defendant herein on all freight traffic beyond local stations on the line of the Cincinnati, New Orleans & Texas Pacific Railway Company.

It was further agreed between the Cincinnati & Green River Railroad Company and the Cincinnati, New Orleans & Texas Pacific Railway Company that said contract should remain in full force for a period of seven years.

The plaintiff further avers that on the 1st day of July, 1888, in an action brought in the Casey circuit court, Casey county, Kentucky, in which action one H. K. Burras was plaintiff and the Cincinnati & Green River Railroad Company was defendant, one George B. Harper was by said court, in said action, appointed as receiver of all the property of every kind and description belonging to the said the Cincinnati & Green River Railroad Company.

Plaintiff further avers that on the 28th day of January, 1889, said receiver, acting under and in compliance with the orders and judgment of said court, sold to Edwards Ritchie certain property belonging to the said the Cincinnati & Green River Railroad Company, consisting of the railroad and everything appertaining thereto, including therein all the right, title and interest of the said the Cincinnati & Green River Railroad Company, in the contract between it and the defendant herein; that said sale was approved and confirmed in said court on the 13th day of June, 1889, and that said receiver, in pursuance of said sale and confirmation, orders and judgment of said court, executed to Edwards Ritchie, the purchaser, a deed conveying to him all the property sold as aforesaid.

Plaintiff further says that on the 1st day of July, 1891, said Edwards Ritchie transferred, assigned and conveyed to the Cincinnati & Kentucky Southern Railroad Company all the property purchased by him from and conveyed to him by the said receiver as aforesaid, including any and all right he might have against the defendant herein by reason of the existence of said contract between the said the Cincinnati & Green River Railroad Company and the Cincinnati, New Orleans & Texas Pacific Railway Company, defendant herein.

Plaintiff further avers that it is now the owner of the said contract that was entered into between the Cincinnati & Green River Railroad Company and the defendant, the Cincinnati, New Orleans & Texas Pacific Railway Company.

Plaintiff further avers that since the said Edwards Ritchie became the owner of said contract between the Cincinnati & Green River Railroad Company and the defendant herein, he and his successors have delivered under said contract to the defendant herein a large amount of freight, and that by reason of said clause in said contract, whereby the Cincinnati & Green River Railroad Company was to receive fifteen per cent. by reason of freights passing over its said road, there is due now to the present owner, plaintiff herein, the sum of $17,329.66.

To this petition the defendant, the Cincinnati, New Orleans & Texas Pacific Railway Company, has filed

several answers, among which it specifically denies that the plaintiff herein, the Cincinnati & Kentucky Southern Railroad Company, or its assignors, were the owners of said contract. And the sole question to be determined in this case is, is the plaintiff, the Cincinnati & Kentucky Southern Railroad Company, the owner of said contract?

The case was submitted upon evidence, and the record wherein said suit was brought by one H. K. Burras, on the 1st day of July, 1888, in the Casey circuit court, Casey county, Kentucky. It appears from said record that an order was made by said court directing the receiver to sell said railroad and properties of the said the Cincinnati & Green River Railroad Company, which order is as follows:

"It is therefore ordered and adjudged by the court, that the Cincinnati & Green River Railroad, together with all of its fixtures and appurtenances thereunto belonging, or in anywise appurtenant, be sold; the same being and consisting of about twelve miles of railroad track including sidings, running from King's Mountain, in Lincoln county, Kentucky, to Yosemite, in Casey county, Kentucky, the principal part and portion of which is in Casey county, Kentucky, and two locomotive engines, one combination car, two hand cars, one rabble car, one lot of old iron, two sets of track tools, engine house, depot at Yosemite, Casey county, Kentucky, office fixtures and current supplies on hand, all of which together with any and all other fixtures and appurtenances belonging to or in anywise appurtenant to said railroad, are hereby ordered and directed to be sold together as a whole. And George B. Harper is hereby appointed by the court as a special master commissioner to make said sale."

On the 28th day of January, 1889, the said George B. Harper, as special master commissioner, under the above order, offered said property for sale, and reported to the court that he had sold the same for $21,500; and in his return of sale he describes the property as follows:

"The property sold, as directed in said judgment and specified in the advertisement of sale, consists of the railroad of the Cincinnati & Green River Railroad Company, extending from King's Mountain, in Lincoln county, Kentucky, to Yosemite, Casey county, Kentucky, about twelve miles, including sidings, two locomotive engines, one combination car, two hand cars, one rabble car, one lot of old iron, two sets of track tools, engine house, depot at Yosemite, office fixtues and current supplies on hand, *contracts*, and all fixtures and appurtenances belonging to or in anywise appurtenant to said railroad."

And said sale was confirmed by said court.

It is contended, on behalf of the plaintiff, that in a case like this, where an insolvent's property is to be sold, and where the whole of its effects can not pay its debts, it is reasonable to presume that it was the intention of the court, in making an order to sell such property, that any rights appurtenant to or connected with it should not be left undisposed of. The language in reference to matters of this kind, as in other cases, should receive such construction as will carry into effet what would presumably be the intent of the court.

And it is further contended on the part of the plaintiff that the word "contracts," as used in the order of confirmation, but which was not included in the order of sale, was appurtenant to said railroad; and that, by reason of its having been appurtenant or connected with said railroad, though the word "contract" did not appear in the order of sale, but did in the entry of confirmation, the court did in fact intend to sell said contract, and thereby said contract passed to this plaintiff by reason of said order of confirmation.

Bouvier defines "appurtenant" as follows:

"A thing belonging to another thing as principal, and which passed as an incident to the principal thing. The word has a technical significa-

tion, and when strictly considered is employed in leases for the purpose of including any easement or servitude used or enjoyed with the demised premises."

Therefore, it would seem, from this authority, that appurtenances and matters thus appertaining more properly belong to real estate than to personal property; and that this contract, under the word "appertaining" to said railroad property did not pass with said sale.

In other words, the court did not order said contract to be sold; and because the confirmation of the sale and the deed based upon said confirmation is broader than the order of sale, it can not operate more extensively than the order of sale itself, and can not embrace subjects that were not included in said order of sale.

A receiver acts under orders and directions of the court, and the only title or property he can convey is that ordered by the court to be sold, and should he include property not ordered sold, and the same is afterwards confirmed by the court, it must be considered as being confirmed inadvertently. We can not inquire, in this proceeding, what the court intended, or whether it made a mistake. The only thing we can look at is, did the court order said contract sold? Suppose the court had two pieces of real estate in the hands of the receiver, described as lots 1 and 2, and the court ordered lot 1 to be sold, and the receiver includes in his sale lots 1 and 2, and the sale is afterwards confirmed, would title to lot pass by such sale?

In the case of Shribers, lessee, v. Lynn, 2 How., page 60, the supreme court of the United States said:

"A chancellor is authorized to proceed in a summary mode, under the statute, for the sale of land in the predicament of the above tract after the decease of the devisee without heirs; but he can only proceed on the application of persons interested. Here was no such application for the sale of this land. The sale being without authority, the ratification of by the court must be considered as having been given inadvertently. If given deliberately, and on a full examination of all the facts, still it must be regarded as an unauthorized proceeding. There was no case before the court—nothing on which a judgment could rest. No court, however great may be its dignity, can arrogate to itself the power of disposing of real estate without the forms of law. It must obtain jurisdiction of the thing in a legal mode. A decree without interest would be treated as a nullity; and so must a sale of land be treated which has been made without an order or decree of court, though it may have ratified the sale."

In the case of Wells v. Chandler, 2 Fed. Rep., 273, 274, the court said:

"It is insisted that the matters complained of by the plaintiff were finally adjudicated in the said court by the order confirming the sale, and the subsequent order overruling the motion to set the sale aside. This renders it unnecessary for us to determine what is the effect of an order of confirmation in such cases. The rule that where a court has jurisdiction of a cause, but has committed errors in its proceedings, its judgment is nevertheless final if not appealed from, does not apply here. The order of confirmation cures all irregularities in the mode of making the sale, but can add nothing to the authority of the officer to make it. If the sale was without authority, a ratification of it by the court must be considered as having been given inadvertently. If given deliberately and on a full examination of all the facts, still it must be regarded as an unauthorized proceeding."

The conclusion, therefore, is irresistible that, in the case at bar, the order of sale granted by the court did not include the contract in question, but that when the sale was confirmed the contract in question was included; and by the court not thus ordering such an important asset to be sold, it is evident that the decree of confirmation can not rise higher than the order making the sale; and, therefore, that the attempted confirmation of the sale of said contract was given inadvertently, and that the title to the same

by reason of said confirmation is not now in the plaintiff.

To the same effect see 1 Wall., 627; 2 Wall., 609; 31 S. W. Rep., 989.

In the last case cited, the court says:

"The order confirming the sale went beyond the decree directing the sale, by including the corporate franchises. The decree of confirmation must be restricted by the scope of the decree of sale."

Also, see 33 California, 46, 28 Indiana, 66; 2 Hughes, 273; 3 N. Y., 511.

In certain litigation pending in the Casey circuit court aforesaid, an appeal was taken to the court of appeals of the state of Kentucky, and Edwards Ritchie claiming to be the owner of said contract, desired to be made a party defendant in said cause, setting up, among other things, that he was entitled at that time to the proceeds of said contract, and the court of appeals, in denying him the right to participate in said litigation, used the following language:

"There is nothing whatever in the judgment authorizing the sale of that contract or its proceeds, and how the confirmation of the report, selling that which was not authorized to be sold by the judgment, passes the title, is difficult to perceive."

The court is of the opinion that the plaintiff is not the owner of said contract; and the petition is therefore dismissed.

Marsh & Ritchie, for Plaintiff.

Harmon, Colston, Goldsmith & Hoadly, and S. D. Bowers, for Defendant.