68 U.S. 627 (1863)
1 Wall. 627
GRAY
v.
BRIGNARDELLO.
BRIGNARDELLO
v.
GRAY.
Supreme Court of United States.

*632 Mr. Galpin, for the widow and infant.
Mr. Carlisle, contra.
*633 Mr. Justice DAVIS delivered the opinion of the court.
The character of the suits brought in the State court by C.J. Eaton, by W.H. Gray, the parties to them, the kind *634 of evidence on which they were sustained, and their ultimate termination, provoke comments, but we forbear to make them.
The vital question in these cases is this: "Did the decree of the 27th of October, or any subsequent decree or proceeding in the court, authorize the sale that was made of the real estate of Franklin C. Gray, and under which sale the defendants below claimed title?"
Numerous objections have been taken here, and were taken in the court below, to the validity of the proceedings prior to the rendition of the decree, which, although interesting, will not be discussed, and no opinion given, as it is not necessary to decide them.
It is a well-settled principle of law, that the decree or judgment of a court, which has jurisdiction of the person and subject-matter, is binding until reversed, and cannot be collaterally attacked. The court may have mistaken the law or misjudged the facts, but its adjudication when made, concludes all the world until set aside by the proper appellate tribunal. And, although the judgment or decree may be reversed, yet, all rights acquired at a judicial sale, while the decree or judgment were in full force, and which they authorized, will be protected. It is sufficient for the buyer to know, that the court had jurisdiction and exercised it, and that the order, on the faith of which he purchased, was made and authorized the sale. With the errors of the court he has no concern. These principles have so often received the sanction of this court, that it would not have been deemed necessary again to reaffirm them, had not the extent of the doctrine been questioned at the bar.[*]
But did the decree or decrees relied on to defeat the plaintiffs' title authorize the sale that was made?
The decree of the 27th of October, 1855, found the existence of the partnerships, and the interest of each member of the firm, and a commissioner was appointed to take and *635 state the accounts, and to ascertain the nature and extent of the partnership property, and to report to the court. The decree proceeds to say, that the commissioner, "after he shall have made such reports, and the same shall have been passed upon by the court, and in accordance with such further directions in this behalf, if any, which the court may give him, do proceed to sell all the real and personal estate of the said partnership, both or either of them." This decree is manifestly interlocutory. No authority was given to sell until the commissioner had reported the state of the accounts, and what property was owned by the different firms, and the court had passed on the report. The court, properly enough, reserved the right to approve or disapprove the report before the authority to sell was complete. How could the court know, until the accounts were stated, whether anything was due William H. Gray, or Eaton, and consequently, whether there was a necessity to sell real estate? It is monstrous to suppose that any court would order a sale to be made, especially where the interests of an infant defendant would be imperilled, until it was judicially ascertained that the rights of others demanded it. In pursuance of the directions given by the decree, the commissioner made his report on the 25th of March, 1856, and without waiting for its confirmation, actually sold, on the 3d day of May following, real estate to the value of nearly $70,000. And, as if to fix beyond question the authority under which he acted, he states to the court in his report of sales, made May 14th, that he sold "the real estate ordered to be sold by the decree pronounced on the 27th day of October, 1855."
But it is claimed that a nunc pro tunc decree, subsequently entered, gave the power to make the sale, and rendered valid what, without it, would have had no validity.
The only proceedings which the record discloses are those set out, ante, p. 629-30, and under them the claim is made.
The motion there speaks of an interlocutory decree having been entered on the 7th day of April, which it was desired to correct. And the court, in passing on the motion, say that there was an error in the decree, which was the result *636 of a mistake, and direct an amended decree to be entered nunc pro tunc, in lieu of the one which was entered on the 7th of April.
This motion and order are predicated on a state of facts which did not exist. No decree was ever entered on the 7th of April, nor on any other day prior to the sale, and we cannot, therefore, even conjecture what the errors and mistakes were which it was desirable to correct. If the court had said, that on the 7th of April, the report of the commissioner was approved, and the sale ordered, but through inadvertence or neglect on the part of the court or its officers, the proper entries were not made, then it might well be argued that a nunc pro tunc decree could be made. A nunc pro tunc order is always admissible, when the delay has arisen from the act of the court.[*] But that is not this case. There is nothing to show that the report of the commissioner was approved prior to the sale; no evidence that any decree was entered, or any authority even to make one, on the day stated, nor in fact that the court was in session on that day. By no rule of law can a decree, which was clearly an afterthought, and made subsequent to the sale, bolster up the authority to make it. Purchasers at a judicial sale are protected, when the power to make the sale is expressly given, not otherwise. It is only when they buy on the faith of an order of the court, which clearly authorizes the act to be done, that the shield of the law is thrown around them. An officer of the court may erroneously suppose that the power to sell is given by a decree, yet, if he does sell, his act is without authority of law, and is void.
The sale made by James D. Thornton, the commissioner appointed by the judge of the District Court of the Fourth Judicial District of California, on the 3d day of May, 1856, was without authority of law, and void. The purchasers at that sale acquired no rights against the heirs of Franklin C. Gray, and the deeds given by the commissioner conveyed no title. These general views are decisive of this controversy. *637 The court below directly charged the jury, that it was their duty to find a verdict against the plaintiff, Matilda C. Gray, which instruction was particularly excepted to, and was erroneous.
Case No. 169, in which Brignardello and others are plaintiffs in error, is affirmed with costs; and case No. 223, in which Matilda C. Gray is plaintiff in error, is reversed with costs, and remanded, and a venire de novo awarded.
JUDGMENT ACCORDINGLY.
NOTES
[*] Voorhees v. Bank of United States, 10 Peters, 449; Grignon's Lessee v. Astor, 2 Howard, 319.
[*] Fishmongers' Co. v. Robertson, 3 Manning, Granger and Scott, 970.