## BLAISDELL v. HARRIS.

After verdict for the plaintiff, the case was transferred to the law term for the consideration of the full bench, upon exceptions taken by the defendant. While the cause was thus pending in the law term, the defendant died. Afterward, the defendant's exceptions being overruled, it was *held*, that the plaintiff should have judgment as of the term when the verdict was rendered.

In this case—Joshua S. Blaisdell against David G. Harris—a verdict was rendered for the plaintiff at the September trial term, 1871.

A motion was made by the defendant to set aside the verdict, upon exceptions to the ruling of the court, and for other reasons; and the case being heard at the July law term, 1872, and this court having settled the questions arising on the case in favor of the plaintiff, the plaintiff now moves for judgment on the verdict as of a time prior to the decease of the defendant (suggested at this term), and after the rendition of the verdict.

*C. W. & E. D. Rand*, for the plaintiff.

The motion was resisted by *H. & G. A. Bingham*, as friends of the court.

FOSTER, J. At common law, the death of a sole plaintiff or defendant before final judgment would have abated the suit; but, as a rule so rigorous was found often to work injustice, it became modified in practice, and subject to several exceptions and limitations.

And it is now well established at common law, and independent of the special authority conferred by statute, and the general rules of practice of the English courts (Rule 3, Hil., 4 Wm. 4), whereby it is provided that it shall be competent for the court or a

judge to order a judgment to be entered *nunc pro tunc*, that " if either party die, after a special verdict or special case, and pending the time taken for argument or advising thereon, or on a motion in arrest of judgment, or for a new trial, judgment may be entered after his death, as of the term in which the *postea* was returnable, or judgment would otherwise have been given *nunc pro tunc*,—that the delay arising from the act of the court may not turn to the prejudice of the party." The granting of leave so to enter up judgment " is, in all cases, discretionary in the courts ; and being a matter of indulgence, they have sometimes refused to allow it after a considerable lapse of time, where the delay has been owing to the plaintiff or his attorney." 2 Tidd's Prac. 932, 933, and notes to 3d Am. ed. ; 3 Chitty's Gen. Prac. 101. Tidd speaks of a special verdict or special case, using those terms, doubtless, in a technical sense, as applicable to a verdict or case by which the facts are put on the record and the law submitted to the judges ; but the authority of the court to order a judgment *nunc pro tunc* is not thus limited, as will be seen by reference to numerous cases, but applies to any case where the operation and effect of a general verdict are suspended by the transfer of the case upon questions of law.

It need hardly be remarked that the rule and practice are not limited to the case of judgments upon verdicts, but to judgments rendered upon the pleadings, upon nonsuit, default, or at any stage of the cause. Thus, in judgment for the plaintiff upon the defendant's demurrer, " it was alleged that since the time which the court took to 'advise, the defendant in error was dead; and therefore they prayed that they might enter the judgment *nunc pro tunc*, as was done in the case of *Baller* v. *Delander*, Trin., 1 Geo., in *B. R.*, which was ordered accordingly." *Cumber* v. *Wane*, 1 Str. 426. So, in *Astley* v. *Reynolds*, 2 Str. 917, the plaintiff had judgment ; and the defendant dying pending the argument, judgment was ordered to be entered *nunc pro tunc*.

In *Blewett* v. *Tregonning*, 4 Ad. & El. 1002, the plaintiff obtained a verdict ; but the defendant obtained a rule *nisi* for a new trial, which after the lapse of a year was discharged. After the discharge of the rule the defendant died ; but the cause still remained in court through two terms, owing to delay occasioned by the taxation of costs, no fault in that particular being imputed to the plaintiff. The court ordered judgment to be entered *nunc pro tunc*. A similar order was made, under similar circumstances, in *Evans* v. *Rees*, 12 Ad. & El. 167.

In *Green* v. *Cobden*, 4 Scott 486, it was said,—" The court will not deprive the plaintiff of the fruits of a judgment obtained by him on a special case, argued and determined after the death of the defendant, though four terms have elapsed between the time of his obtaining and entering up judgment, unless it be shown that the defendant's estate had suffered prejudice by the delay."

In *Key* v. *Goodwin*, 1 M. & Scott 620, TINDAL, C. J., said,—" There are many cases where it has been laid down that, when the proceedings have been stayed by the act of the court itself, the parties shall not

thereby be prejudiced. In the present case, the defendant obtained a verdict. If all had proceeded regularly, he would have had judgment after the expiration of the first four days of the succeeding term. The court, from the peculiar circumstances in which the cause stood, thought fit to suspend the rule. It would be manifestly unjust to allow the plaintiff to take advantage of the defendant's demise in the interim."

In *Lawrence* v. *Hodgson*, 1 Y. & J. 372, 373, GARROW, B., said,—" I perfectly understand the principle upon which the courts have permitted the parties to enter up judgment, after the period in which they could legally have done so has elapsed, when the delay originates in the court, and, but for which delay, the judgment might have been regularly entered. When a case stands over for argument from term to term, on account of the multiplicity of business in the court, or for judgment, from the intricacy of the question, the party ought not to be prejudiced by that delay, but should be allowed to enter up his judgment retrospectively, to meet the justice of the case. No such facts, however, exist in this particular instance, and the delay is imputable alone to the laches of the party interested in the judgment. The rule, therefore, which regulates the former cases does not apply to this."

*Copley* v. *Day*, 4 Taunt. 702, was referred to in the argument of *Lawrence* v. *Hodgson;* and it was held to be applicable to that case, and an authority for its decision. But, in *Copley* v. *Day*, the authority and practice of the court to order the entry of a judgment *nunc pro tunc* was distinctly recognized, although a motion to that effect was denied in the particular case, because no steps had been taken to enter up judgment for the defendant until more than two years after the plaintiff's death, no proceedings having, during that time, been depending in court, and the delay being attributable, as in *Lawrence* v. *Hodgson*, only to the laches of the party himself.

In *Fishmonger Co.* v. *Robertson*, 3 M. G. & S. 970, a motion to enter judgment *nunc pro tunc* was denied, on the ground of the laches of the party making the motion. It was held in that case that the motion would be allowed whenever the delay *is* occasioned by the court, " *aliter*, if suspended by negotiations of parties, or doubt as to form."

In *Bridges* v. *Smyth*, 8 Bing. 29, the motion was allowed where the delay had been occasioned by a motion touching an award.

It was also allowed where, on demurrer after the defendant's death, the state of the list delayed the argument of questions reserved ; and also in *Miles* v. *Williams*, 9 Q. B. 47 ; and it was denied in *Vaughan* v. *Wilson*, 4 Bing. (N. C.), where the delay had been caused by the plaintiff; and in *Freeman* v. *Tranah*, 12 C. B. 406, it was held that judgment *nunc pro tunc* after the death of the defendant cannot be entered after the time allowed by law, in any case, unless the delay is the act of the court.

The principle upon which the foregoing cases are based is also recognized in *Lanman* v. *Lord Audley*, 2 M. & W. 535, and *Wilkes* v.

*Perks,* 5 M. & G. 376 ;—and in *Mara* v. *Quin,* 6 D. & E. 1, GROSE, J., says,—" Though this is an application to amend a judgment against an executor, it is like the common case of entering up a judgment *nunc pro tunc,* which is done perpetually."

Such being the rule and practice in Great Britain, if we turn to the decisions of the American courts upon this subject, we shall find that, although the reported cases are not numerous, they seem to be uniform.

In *Perry* v. *Wilson,* 7 Mass. 393, after verdict and a continuance for advisement, the defendant died, and judgment was rendered as of the former term,—PARSONS, C. J., observing that where an action was delayed for the convenience of the court, they would always take care that no party suffer by such delay.

In *Patterson* v. *Buckminster,* 14 Mass. 144, where a supposed trustee answered in an unsatisfactory manner, and a further examination was ordered before a justice of the peace, to which he refused to submit,— and, before the ensuing term, the defendant, who had been defaulted, and the trustee, both died,—the court entered judgment and gave execution, as of the former term, against the trustee.

In *Currier* v. *Lowell,* 16 Pick. 170, a verdict had been rendered in favor of the plaintiff in an action against the city for injuries sustained in his person and property by reason of a defective highway. A motion was made by the defendants for a new trial, and after the commencement of the ensuing law term of the court, but before any hearing was had upon the motion, the plaintiff died. The court refused to dismiss the action, and, upon overruling the motion for a new trial, ordered judgment to be entered up as of the preceding trial term. PUTNAM, J., after reciting the passage from Tidd's Practice, which we have quoted in this opinion, continued,—" and although there can be no appearance for the party who has deceased, yet the court will hear . from any one of its officers, as an *amicus curiæ,* any suggestions as to the merits." The following cases are cited as sustaining the opinion of the court : *Ilsley's case,* 1 Leon. 187 ; *Oades* v. *Woodward,* 1 Salk. 87 ; *Crispe* v. *Jackson,* 1 Sid. 462 ; *Tooker* v. *Duke of Beaufort,* 1 Burr. 147 ; *Mayor of Norwich* v. *Berry,* 4 Burr. 2277.

It is true that express authority is given by statute of 1842, in Massachusetts, and by General Statutes, ch. 115, sec. 4, to the courts to " enter any judgment as of any day of a former term," " at their discretion, whenever justice requires it ;" but, said METCALF, J., in *Springfield* v. *Worcester,* 2 Cush. 62, " we are of opinion that the common law authorizes us to enter judgment as of the term when the verdict was rendered."

In New York, after verdict rendered, and before the decision of the court on a motion for a new trial, one of two defendants died. A new trial being refused, the plaintiff was permitted to enter judgment against both defendants as of a term preceding the death of one of them. *Ryghtmyre* v. *Durham,* 12 Wend. 245.

In Maine, after verdict in his favor and before judgment, the plaintiff,

in trespass *quare clausum fregit,* died. Judgment was ordered as of the term when the verdict was returned. *Goddard* v. *Bolster,* 6 Greenl. 427.

In Connecticut, where the defendant, in an action of trespass, died after trial and verdict for the plaintiff, and during the pendency of a motion by the defendant for a new trial, it was held that, the rule for such motion being discharged, judgment might be entered for the plaintiff as of the term in which the verdict was returned. *Collins* v. *Prentice.*

Without further reference to the particulars of the instances in which a judgment *nunc pro tunc* has been entered after the death of a party, it is sufficient to say that the authority and practice of the courts to that effect are fully recognized in *Spalding* v. *Congdon,* 18 Wend. 543 ; *Gilbert* v. *Corbin,* 18 Wend. 600 ; *Den* v. *Tomlin,* 3 Harrison (N. J.) 14 ; *Erie R. R. Co.* v. *Ackerson,* 33 N. J. (Law) 33 ; *Pool* v. *Loomis,* 5 Pike (Ark.) 110 ; *Womack* v. *Sanford,* 37 Ala. 445 ; *Small* v. *Douthitt,* 1 Kan. 335 ; and by the supreme court of the United States, in *Clay* v. *Smith,* 3 Pet. 411 ; and *Gray* v. *Brignardello,* 1 Wall. 636, in which latter case it was said,—" A *nunc pro tunc* order is always admissible, when the delay has arisen from the act of the court."

We have no direct decision, in our own State, of the question now before us, but the principle is clearly recognized in *Strafford Bank* v. *Cornell,* 2 N. H. 324, in which WOODBURY, J., reciting the facts of the case then before the court, says,—" The judgment was entered up here as of the preceding term, according to the established usage in cases of that kind,"—citing 3 Bl. Com. 383. And again, he says,—" In England, where, in the ordinary practice in case of verdicts, judgment is not rendered till after the fourth day of the subsequent term, and is then entered as of the preceding term to give it an earlier operation as between the parties, the defendant is never permitted to avoid that operation, by evidence of the true time when judgment was agreed upon. The delay is for the benefit of the defendant, to move in arrest of judgment or for a new trial ; and, when unsuccessful in such motions, the judgment is properly entered *nunc pro tunc,* so that the plaintiff may not suffer by the delay ; and when so entered, it should so operate to every purpose between the parties, else the very design of the entry may be defeated." And the dicta of WOODS, J., in *Parker* v. *Badger,* 26 N. H. 466, indicates very clearly the opinion of the court that authority was vested in them to issue an order of the kind now prayed for. He says,—" The court will, on good cause shown, and for the promotion of justice and the protection of actual rights, order a judgment to be entered as of a term, or a day in a term, anterior to that on which the order is made. And the judgment so entered will take effect by relation from the day indicated." " Such an order clearly could not properly be made until after verdict or default, or other record confession of indebtedness, fully entitling the party to judgment."

Any delay which was occasioned by the transfer of a cause for advisement after verdict, upon proper proceedings by a party who is not in fault, but is seeking in a rightful manner (as the defendant in this case was) the full and ultimate consideration of his cause, is deemed the act and delay of the court, whether in fact the decision of the questions transferred is retarded by a pressure of business, or only by the lapse of time between the trial and the law term.

It need hardly be remarked that if delay is occasioned by the act of a party, in any proper sense, such party will not be permitted to take advantage of his own act, and thereby procure an order for a judgment as of a previous term ; but whenever a party has obtained a verdict, or in case of nonsuit or default, so that he is justly entitled to a judgment, and delay is caused for reasons concerning which the party moving for a judgment *nunc pro tunc* is not in fault, the court, in the exercise of a sound discretion and to promote justice, may, and ordinarily will, go back to the time when the judgment might have been rendered on the verdict, if no motion had been made which prevented it, and order a judgment as of such time. That the legislature understood that the court had power to order judgment in accordance with the motion now before us, is very clearly manifest from the provisions of section 39, chapter 205, General Statutes, which is that " if judgment for the plaintiff is rendered by direction of the court, as of a previous term, * * property attached shall be holden until the expiration of thirty days from that date."

Not to exercise such discretion and authority in this case would be to permit manifest injustice to be done. The plaintiff had prevailed with regard to the merits of his controversy, and was entitled to a verdict, judgment, and execution thereon, to be satisfied by levy upon property secured by his attachment, but for the delay of the court in the consideration of exceptions to the verdict suggested by the defendant, and found to be groundless.

The result will be, not to withdraw from the general creditors of an insolvent estate any fund upon which they had a right to rely for a *pro rata* distribution,—for, as to this plaintiff, there was no such fund to which he should be compelled to resort,—the policy of our law not discouraging but promoting diligence in the obtaining security for debts by attachment, to the exclusion of less diligent creditors. Other creditors of the deceased defendant will not be heard to complain that the plaintiff has used more diligence than they have, and obtained a judgment, while they were content to rely upon the defendant's credit, without seeking security. *Vigilantibus et non dormientibus jura subveniunt.* See *Grosvenor* v. *Gold*, 9 Mass. 209.

A friend of the court suggests that the motion should not be granted, because, by the provisions of chapter 205, section 34, General Statutes, the plaintiff's attachment was dissolved by the death of the defendant, his estate being decreed to be administered as an insolvent estate ; but it is entirely clear that this statute has reference to cases pending at the decease of the defendant, and does not apply to cases

where judgment has been rendered before the decease.   *Waitt* v. *Thompson*, 43 N. H. 163.

The plaintiff, by the order for judgment *nunc pro tunc*, stands in the position of a party having obtained a judgment before the decease of the defendant; and in *Bowman* v. *Stark*, 6 N. H. 461, it was held that an attachment is not dissolved by the death of the debtor after judgment, although he may die insolvent.   The statute was not intended and will not be construed to promote injustice.

Let the order issue for judgment upon the verdict, as of the September trial term, 1871.