J. W. BRICKLEY, Appellant, v. LOUIS WESTPHAL, Appellee.

**Counties:** RECORD OF BOARD OF SUPERVISORS: AMENDMENT. A board of supervisors after the lapse of four years, has no power to change or amend its record of the canvass of a statement of consent to the sale of intoxicating liquors, so as to make it

show a finding that a majority of the voters of a certain township had signed the petition, where the original record contained no such finding, nor any statistics from which the board could have found such fact.

*Appeal from Jones District Court.*— HON. B. H. MILLER, Judge.

FRIDAY, MAY 10, 1907.

ACTION in equity to enjoin an alleged liquor nuisance. Injunction denied and plaintiff appeals.— *Reversed* and *remanded.*

*Chas. W. Kepler & Son,* for appellant.

*Park Chamberlain* and *Jamison & Smyth,* for appellee.

WEAVER, C. J.— The incorporated town of Olin is situated in the township of Rome, Jones county, Iowa; said township and incorporated town constituting a single election precinct. In the year 1898 a petition or statement of general consent for the sale of intoxicating liquors in Jones county was presented to the board of supervisors, who canvassed the same at their December, 1898, session. Of this canvass a record was made in the minutes of the proceedings of the board, setting forth that the statement of consent was found to be signed by 68 per cent. of the legal voters of the county who voted at the last preceding election. Said record further sets forth the number of voters in each election precinct and the number of such voters from each precinct signing the statement of consent. In this list the township of Rome is credited with 397 voters, of whom the board found 226 had signed the statement, but no attempt was made to distinguish between the voters of said township residing within the corporate limits of Olin and those residing outside, nor was any mention made of said town of Olin or of the proportion of its voters who signed said

statement. The record of the canvass of the statement concludes with the following resolution:

Resolved, that after a full and thorough canvass of the petitions of consent for the mulct law which have been filed herein, this board finds that more than 65 per cent. of the persons who voted at the last general election in this county have signed said petitions, and that the law in connection therewith has been complied with. It is therefore ordered that the prayer of the petition be granted. Yeas and nays being called for resulted as follows: Yeas, 5; nays, none.

This record remained unchanged for something over four years, when at the January, 1903, session of the board of supervisors, action was taken and an additional record made, as shown by the following entry, which, as it furnishes the one subject of controversy in this case, we quote in full:

### Book G, 325, Proceedings of Board.

Regular meeting of the board of supervisors of Jones county, Iowa, January session, 1903. The question of the record of the board of supervisors for their regular session, A. D. 1898, in respect to the petition of general consent for the sale of intoxicating liquors under the mulct law, filed with the county auditor by the legal voters of Jones county, Iowa, who voted at the general election in November, A. D. 1898, failing to show all the findings and conclusions of the board which had been done at said November session, A. D. 1898, having been called to the attention of the board, the following proceedings were thereupon had:

Whereas, at the regular session (November) of the board of supervisors of Jones county, Iowa, A. D. 1898, a canvass of the said petition of general consent heretofore filed with the county auditor of Jones county, Iowa, of the voters who had voted at the November election, A. D. 1898, was made by the board of supervisors on the 9th day of December, 1898, it being still the November session and a partial record was then and there made on the result of said canvass as found by the board of supervisors; and whereas, the board of supervisors, on account of the failure of the attorneys who drafted the record to incorporate in said record all the

material findings and conclusions of the board in regard to said petition, did not make of record all the material findings and conclusions of said board of supervisors, at said session in respect to said petition; and whereas, it was found at the hearing of said petition at the November session, A. D. 1898, by satisfactory evidence, also from facts known to said board and other facts appearing of record that a majority of the voters of the incorporated town of Oxford Junction, Iowa, and also a majority of the voters of the township of Oxford including the town of Oxford Junction who voted at the November election, A. D. 1898, as shown by the poll books in said election, signed the said petition of general consent, and also that a majority of the voters of the township of Rome including the incorporated town of Olin, and a majority of the voters of the incorporated town of Olin who voted at the November election, 1898, as shown by the poll books of said election, did sign the said petition of general consent, but, by the mistake of the attorneys who prepared the record of the findings of said board, the majority as to said town of Olin and Oxford Junction and township of Oxford and Rome were omitted from the record:

Therefore the clerk of the board of supervisors, to wit, the county auditor of Jones county, Iowa, is hereby directed by the board of supervisors on this 7th day of January, A. D. 1903, it being of the regular session of the board of supervisors for January, A. D. 1903, to enter the findings of the board of supervisors so made at the November session, A. D. 1898, as follows: The board of supervisors finds that a majority of the legal voters who voted at the general election A. D. 1898, in the township of Oxford, including the incorporated town of Oxford Junction, signed the petition of general consent to the sale of intoxicating liquors, and a majority of the legal voters at the general election, A. D. 1898, residing within the incorporated town of Oxford Junction signed the petition of general consent to the sale of intoxicating liquors, and that a majority of the legal voters who voted at the general election, A. D. 1898, in the township of Rome, including the incorporated town of Olin, signed the petition of general consent, for the sale of intoxicating liquors, and a majority of the legal voters who voted at the general election, A. D. 1898, residing within the incorporated town of Olin, signed the petition

of general consent for the sale of intoxicating liquors. It is further ordered by the board of supervisors that the clerk of the board of supervisors, to wit, the county auditor, be and he is hereby directed to spread upon the records and enter of record as a part of the findings of the board of supervisors of Jones county, Iowa, at their regular session of November, A. D. 1898, all the foregoing, including the preamble, and as a part of the record and proceedings of the board of supervisors made and entered in respect to the petition of general consent for the sale of intoxicating liquors, in Jones county, Iowa, on the 9th day of December, A. D. 1898, the same not having been incorporated in the record thereof.

Motion by Sutherland that the board proceed to ballot on the question of correcting the records of the aforesaid November session of the board of supervisors in 1898, as prayed in the petition. Motion carried. The ballot resulted as follows: Yeas, 3; nays, 2. ·

It is conceded that at the commencement of this action the defendant was engaged in keeping a liquor saloon in the town of Olin, and the question whether he is liable to be enjoined as prayed depends solely and entirely upon whether he is protected by the provisions of the mulct law, and this, in turn, depends upon whether the record of the board of supervisors constitutes a sufficient showing that a majority of the legal voters of the town of Olin appeared as signers of the statement of consent. We do not understand counsel for appellee to deny appellant's proposition that the record as it stood prior to January, 1903, was insufficient to protect any person engaging in the sale of intoxicating liquors in said town. Nor could such contention well be urged. By Code, section 2449, it is provided that, in order for the bar of the mulct statute to become effective in a town of less than five thousand inhabitants, the statement of consent must be signed by 65 per cent. of the voters of the entire county voting at the last preceding general election (outside of cities of more than five thousand inhabitants), a majority of the voters of the township which in-

cludes the town, and a majority of the voters within the town itself.

The canvass made by the board of supervisors in December, 1898, would seem to indicate the required 65 per cent. of the voters of Jones county and a majority of the voters of Rome township, but contains no statement of any finding that such petition was signed by a majority of the voters in the town of Olin, nor does it show or find any statistics or facts from which the board ought to or could have made such a finding. It must be admitted, therefore, and we understand it is conceded by the appellee, that the decree of the district court must be affirmed, if at all, on the theory that the board of supervisors acted within its proper jurisdiction and authority in making the order and record which we have quoted from the proceedings of its January, 1903, session, and that said record is to have the same force and effect as if made at the December, 1898, session. This position is sought to be justified on the assumption that in passing upon the sufficiency of the statement of consent the board was acting in the capacity of a court, and as such it had the right to correct its records by an order entered *nunc pro tunc,* and that such is, in fact, the effect of the entry made at the January session, 1903. Counsel say they do not claim any power in the board to reopen the canvass or to recanvass the vote, but they insist upon the power, even after the passage of years and when the membership of the board has been partly or wholly changed, to correct or change a record of its proceedings in the manner here attempted. Of the general power of the board within more or less well-defined limits to correct its record there need be no dispute, but it seems hardly necessary to add that, where the power exists, it must be exercised within some reasonable limit of time. *City of Covington v. Ludlow,* 1 Metc. (Ky.) 295.

Moreover, it ought to be, and we think it is, the rule that when a record has once been made of a finding which

adjudicates a fact directly affecting a public or private right, and especially where such finding is one from which a right of appeal exists to some other tribunal, the record thereof cannot afterwards be materially changed or amended either on the board's own motion or upon the *ex parte* application of one of the parties affected thereby. If there be any authority to the contrary, it has not been cited to us and we have failed to find it. Would it be contended that by an order correcting the record of a proceeding entered years before, the board of supervisors may, upon its own motion or upon the *ex parte* application of one of the parties in interest, materially affect the location of a highway, or the boundaries of a drainage district, or an award of damages? But why may it not be done if the decree of the district court in this case is to be affirmed? The persons seeking the protection of the mulct law, in avoidance of the penalties prescribed by the prohibitory law, are not the only persons interested in the proceedings. The statute carefully preserves to any citizen of the county the right of appeal from a finding of the board upholding the sufficiency of a statement of consent. In a fair sense of the word, we may say the statute makes every individual citizen of the county a party to the proceedings, and, when the board has declared its finding and entered its judgment or conclusion therein, such citizen has a right to rely upon it as final. The board obtains jurisdiction to canvass the statement only by a notice given to the public (Code, section 2450), and at such hearing any citizen may appear and contest the sufficiency of the consent. This right would be of but little value if after a finding has once been entered the board, without notice or opportunity for protest by the people, may at a subsequent meeting nullify the effect of the record which has been made.

It is easily conceivable, in such a case as this, that, if the board had made a finding which legalized or protected the liquor traffic in Olin, some one or more citizens of that

town would have appealed therefrom and contested the showing in its support, while, in the absence of such finding, they would be content with the record as made. If then, four years after the record is made and after the membership of the board has been changed in whole or in part, and after the auditor who made the record has retired from office, the board may proceed under the claim of correcting a clerical mistake or omission to reverse the legal effect of such record and thereby legalize the liquor traffic in territory where up to that moment it has been admittedly unlawful, the door is opened wide to the fraudulent evasion of the law, and the citizens whose rights have been thus foreclosed are practically without remedy. Accepting for the purposes of the argument the appellee's contention that the board of supervisors acts in a judicial capacity in canvassing a statement of consent and, like a court, may amend its records, the closer we draw the likeness or analogy the less justifiable do we find the order now under consideration. It goes without saying that no court will undertake to amend its record in a material respect without due notice to all parties affected thereby.

Moreover, generally speaking, orders amending a record *nunc pro tunc* are entered only for the purpose of correcting some clerical error or omission and they presuppose the existence of some record to be amended. It is not permissible in this manner to enter a judgment or order as of a past date simply because such a judgment or order might properly have been entered at that date. Such order is proper only where the judgment or order or finding was in fact made and declared, but by some mistake or oversight it has not been recorded. In other words, the record must show something to be amended before an order to amend is admissible. Now, the record of the December, 1898, session, as we have already noted, contains no reference whatever to the town of Olin, and shows no act or attempt on part of the board to canvass or classify the voters of Rome

township with reference to their residence within or without the corporate limits of Olin. Therefore, so far as said town is concerned, the entry made at the January, 1903, session was the creation of a new and additional record, and not the correction or amendment of one which had before been imperfectly made. Black on Judgments, sections 115, 131, 132, 135; *Gray v. Brignardello,* 68 U. S. 627 (17 L. Ed. 692); *Doughty v. Meek,* 105 Iowa, 16. The record of the proceedings of the supervisors as recorded in December, 1898, and in January, 1903, bears upon its face the plain evidence that, if any mistake was made in the original entry, it was a mistake of law as to the effect of the findings made, and that nothing was omitted through oversight. It is there disclosed that the form of the entry was prepared by counsel, and, as we may fairly presume, by counsel for the promoters of the petition, and the importance of a good and sufficient record for the protection of their clients called for, and we have no doubt it received at their hands the most careful attention. It is difficult, therefore, to believe that a record thus prepared by able and competent men specially employed for that purpose, with all the facts freshly within their recollection, fails to set forth so material and important a finding by the board, if, in fact, the board did find that the names of a majority of the voters of the town of Olin appeared upon the statement of consent. A record thus made is a much safer reliance than the fallible memory of individuals or the dictum of a board, a part of whose members did not participate in the original hearing, and who must, of necessity, act upon the hearsay statements of others.

It is a significant fact in this connection that the resolution of the board at its December, 1898, session, was adopted by a call of the "Yeas" and "Nays," while the adoption of the amendatory resolution at the January, 1903, session is recorded as having been affected *by ballot.* The alleged mistake of the attorneys who drew the original rec-

ord entry was doubtless discovered by the attorneys who procured its alleged correction and drew the form of the last entry. If that correction is to be upheld, what assurance has any one who is interestd on either side of the question that in another year or five years another board of supervisors and other counsel may not discover some other alleged omission in the amended record by the correction of which the liquor traffic may be forced upon some town from which it is now excluded, or be excluded from some town where it now has a legal existence. We think it unnecessary to pursue the discussion further.

For the reason stated, we hold that the prayer of plaintiff's petition should have been granted. The decree of the district court must be reversed and cause remanded for further proceedings in harmony with this opinion.— *Reversed.*

By agreement of counsel, the decision in the case of *J. W. Brickley v. Hans J. Dreiks,* now pending on appeal in this court from the district court of Jones county, is to follow the result in the case at bar. The judgment of the district court therein is therefore *reversed,* and cause *remanded.*