## THE JOHN TWOHY, JR.

(District Court, E. D. Virginia. February 4, 1911.)

1. JUDICIAL SALES (§ 54*)—TITLE AND RIGHTS OF PURCHASER—REVERSAL OF DECREE.

The title acquired by a purchaser at a judicial sale made under the decree of a court having jurisdiction is not affected by a reversal of such decree for errors or irregularities.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 108, 109; Dec. Dig. § 54.*]

2. ADMIRALTY (§ 100*)—SALE OF PROPERTY—TITLE OF PURCHASER—EFFECT OF REVERSAL OF DECREE.

A court of admiralty in a proceeding in rem ordered a vessel sold at private sale, and confirmed the sale when made. The purchasers resold the vessel to persons outside of the district who removed it therefrom. Subsequently an appeal was taken, without supersedeas, and the order of sale was reversed on the ground that the court had no power to authorize a private sale. Held that, notwithstanding such reversal, the vessel could not be recovered from the second purchasers, who were not parties to the litigation, but bought in good faith in reliance on the title given by the court.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 670-673; Dec. Dig. § 100.*]

3. ADMIRALTY (§ 99*)—SALE OF PROPERTY—SETTING ASIDE SALE.

Conceding that a suit to recover the vessel might be successful, the court should not order it where it would then be necessary to resell the vessel, and in all probability the amount realized after paying costs would not be as much as was paid by the first purchaser, and the result would be a loss to the fund.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 661-669; Dec. Dig. § 99.*]

In Admiralty. In the matter of the petition of the Lambert's Point Tow Boat Company, as owner of the steam tug "John Twohy, Jr.," for limitation of liability. On motion to set aside a deed to the vessel made by the marshal and to direct a suit for its recovery. Granted in part.

Hughes & Little, for petitioners.

L. L. Lewis, U. S. Atty.

Jeffries, Wolcott, Wolcott & Lankford, for Moss & Moss.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WADDILL, District Judge. On the 9th day of November, 1910, a rule was awarded in this case, as follows:

"It is ordered on motion of the Lambert's Point Tow Boat Company that W. W. Moss and James B. Moss, partners trading under the name of Moss & Moss, do show cause, if any they can, to this court, at Norfolk, on the 23d day of November, 1910, why the said deed [referring to the deed of sale of the vessel known as the 'John Twohy, Jr.,' executed by the marshal pursuant to decree of court in these proceedings] should not be set aside, and why they should not be required to surrender the said tugboat, John Twohy, Jr., into the custody of the said court, or for such further proceedings as according to justice may appertain."

On the 23d day of November, 1910, pursuant to said rule, which had been duly served upon Moss & Moss, they appeared and filed their answer, setting up, among other things: That on the 18th day of April, 1910, pursuant to the decree of this court entered on the 16th day of April, 1910, they received from the marshal the bill of sale of the tugboat Twohy, which was duly recorded in the office of the collector of customs, in the city of Norfolk, Va., the home port of said vessel, having paid the purchase price therefor of $11,000. That subsequently the Lambert's Point Towboat Company filed its petition in the Circuit Court of Appeals, and procured an appeal from the order under which said sale was made. That said company announced that no supersedeas would be applied for, and in point of fact none was ever granted. That upon the receipt of the deed to the boat aforesaid they set to work at considerable expense in traveling to northern points to sell the Twohy, and succeeded in securing $14,000 for her from McAllister Bros., of the city of New York. That although the appeal was allowed after the sale to McAllister Bros., and without supersedeas, Moss & Moss did not feel justified in giving a general warranty to the boat, and the purchaser would not take the boat without a general warranty deed. Whereupon it was agreed that the $14,000 should be paid into the National Bank of Commerce, Norfolk, Va., to be held by said bank, and to be paid to said Moss & Moss upon their title to the boat being confirmed, either by the United States Circuit Court of Appeals or some other competent legal tribunal; and in the event that title was not confirmed to them in said boat, and the purchasers were required to surrender and give up the same, then the fund should be repaid to them. Thereupon the Lambert's Point Towboat Company introduced certain evidence in support of its motion, namely, portions of the record in this case, as well as the bill of sale aforesaid from the marshal to Moss & Moss, and the said Moss & Moss likewise placed in evidence the bill of sale aforesaid from themselves to McAllister Bros., with the exhibits therewith, and examined certain witnesses in support of their claim.

The case is now before the court upon the questions arising upon said rule, the testimony thus submitted, and upon the motion of the Lambert's Point Towboat Company asking the entry of the following order (title omitted):

"This cause came on this day to be heard upon the rule to show cause, the return thereto, the pleadings, proofs, and exhibits, and was argued by counsel, and thereupon it is adjudged, ordered, and decreed that the bill of sale

made by the marshal of this court to Moss & Moss and dated the 18th day of April, 1910, conveying the steam tug John Twohy, Jr., to the said Moss & Moss, be, and the same is hereby, set aside; and it further appearing that on the 8th day of June, A. D. 1910, the said Moss & Moss conveyed the said steam tug John Twohy, Jr., to McAllister Bros., for and in consideration of the sum of fourteen thousand dollars ($14,000.00), it is adjudged, ordered, and decreed that Walter B. Gwyn, trustee, be, and he is hereby, directed, to proceed against the said McAllister Bros., or the said tugboat John Twohy, Jr., by appropriate proceedings to recover the said tugboat John Twohy, Jr., with all profits earned by the said McAllister Bros., from the time of the conveyance of the said steam tug to them. And the question of the liability of the said Moss & Moss for rents and profits of the said tugboat is reserved until the result of the litigation by the trustee to recover the said tugboat, together with the question of their liability to refund the amount realized from the sale of said tugboat, in case proceedings for the recovery of said tug are unsuccessful."

First. It goes without saying that pursuant to the decree of the Circuit Court of Appeals the first deed executed by the marshal should be set aside, and a decree to that end will be entered. By that decision, it was determined that a private sale of a vessel seized in an admiralty proceeding could not be legally made, although two efforts to dispose of the same at public auction had proved ineffective. While it is believed that this is the first decision to that effect that can be found, still it is now the law in this circuit, and it is no less the duty than it is the pleasure of this court to respect and carry out the same.

Second. The question then to be determined is, What action should be had upon the decree asked for in the light of the mandate of the appellate court, which, after directing the setting aside of the deed as aforesaid, required this court "to proceed with the cause as may be proper, as its condition will then suggest and demand, and as the respective interests of the parties may require, in accordance with the opinion of this court herein." The Lambert's Point Towboat Company urges that Walter B. Gwyn, trustee, to whom the tug was conveyed in these limited liability proceedings, be directed to proceed against the said McAllister Bros., or the tugboat John Twohy, Jr., by appropriate proceedings to recover said boat with the profits earned by said McAllister Bros. from the time of the transfer of the steamboat to them, and it is as to the propriety of this request that the court has to determine; it being admitted that said McAllister Bros. reside without, and the tugboat is not within the jurisdiction of this court.

We must first ascertain the legal status of McAllister Bros., as the purchasers of this boat; the Lambert's Point Towboat Company having prosecuted its appeal, which resulted in the reversal of the decree of sale under which their vendors bought, without executing a supersedeas bond, and said McAllister Bros having purchased before receiving notice of the appeal. If under the circumstances, they acquired good title to the boat, that would end further controversy in this case, so far as the vessel's ownership is concerned.

[1] In the view of the court, there can be no doubt as to what their status is, and that they are the bona fide holders for value of

the boat itself, having acquired the same through purchasers at a judicial sale, under decree of a court of competent jurisdiction, with proper parties and subject-matter before it, and, having paid for and received title to the property, they cannot be disturbed or molested in the ownership thereof. Unless this is true, judicial sales would come to an end, as nothing is better settled than that the reversal of a decree of a court of competent jurisdiction will not operate to affect the title to property sold under such decree, if the court making sale had before it the necessary parties and the proper subject-matter in litigation.

In Gray v. Brignardello, 1 Wall. 627, 634, 17 L. Ed. 692, it is said:

"It is a well-settled principle of law that the decree or judgment of a court which has jurisdiction of the person and subject-matter is binding until reversed, and cannot be collaterally attacked. The court may have mistaken the law or misjudged the facts, but its adjudication, when made, concludes all the world until set aside by the proper appellate tribunal. And, although the judgment or decree may be reversed, yet all rights acquired at a judicial sale while the decree or judgment were in full force, and which they authorized, will be protected. It is sufficient for the buyer to know that the court had jurisdiction and exercised it, and that the order, on the faith of which he purchased, was made and authorized the sale. With the errors of the court he has no concern. These principles have so often received the sanction of this court that it would not have been deemed necessary again to reaffirm them, had not the extent of the doctrine been questioned at the bar."

The doctrine here announced is well recognized throughout the country as the rule applicable to judicial sales; and in no state stronger than in this state, and certainly in the states of Maryland, West Virginia, and North Carolina. Zirkle v. McCue et al., 26 Grat. (Va.) 517, 527; Ward et al. v. Hollins et al., 14 Md. 158; Hughes v. Hamilton et al., 19 W. Va. 366, 397, and cases cited; Hull v. Hull, 26 W. Va. 30, and cases cited; Sutton v. Schonwald, 86 N. C. 198, 203, 41 Am. Rep. 455; England v. Garner, 90 N. C. 197, 201.

The decision of the Supreme Court in Gray v. Brignardello, 1 Wall. 627, 17 L. Ed. 692, supra, is followed by that court in as late a decision as Davis v. Gaines, 104 U. S. 386, 391, 26 L. Ed. 757, in which the former was cited and fully approved. This doctrine also has the support of approved text-writers; Rorer on Judicial Sales, p. 138, saying:

"The title acquired at a decretal sale of land made by the court in the exercise of competent jurisdiction is not rendered invalid by the reversal of the decree for mere irregularity or errors. This, too, although the purchaser was a party to the suit in which the decree was made. Nor, if notice be given to the purchaser at the time of the sale, and before he purchased, that an effort would be made to reverse the decree."

[2] The Lambert's Point Towboat Company, apparently seeing the force of the cases cited, seek to avoid the same, and ask the court to authorize the institution of a collateral proceeding to set aside a sale to an innocent purchaser whose vendor acquired title under the decree of this court by attempting to show that said vendors were parties to the proceeding, and not entitled to the protection due an ordinary purchaser buying propery sold under judicial proceedings; and in support of their contention cite several authorities, relying

especially upon the case of Marks v. Cowles, 61 Ala. 299. It may be seriously doubted, assuming an exception of the character made to exist at all, and which has for its support a very considerable weight of authority, whether the same applies to sales had in proceedings in rem, notably in admiralty cases, where prompt and effective disposition of the res is absolutely essential, to the maintenance of the jurisdiction itself. And, moreover, it would seem clear that, if such an exception exists as to sales to parties, it does not mean mere quasi parties, who become such merely because they purchase at the sale. It refers to regular parties to the litigation, who have an interest in and claim to the thing—i. e., land—sought to be sold, or in litigation. Perhaps, with some reason, as between them, it might be contended that a supersedeas need not be given, as one could be said to acquire no rights against the other by bidding at an erroneously ordered sale, and that they and persons taking under them would necessarily have notice of the infirmity in their title. But this has no application to a case where an outsider, as for instance, Moss & Moss, in this case, bids on property, and acquires it, and subsequently makes sale of it to another purchaser. To apply that doctrine in the latter case would be an absolute suspension of all judicial sales. If either the libelant or respondent could suspend a judicial sale of a ship by raising the question of inadequacy of price, and appeal without supersedeas, as was done here, what would become of the property? It would be in the possession of the court. No purchaser would take it, and no sale could be made of it, because of a mere desire of one party to receive a greater price. An owner, in debt, if this be the law, would have his creditor absolutely at his mercy, and prompt and effective methods of realization by judicial proceedings in admiralty would be at an end, indeed, the effort to dispose of such property would quickly become a farce. That the doctrine contended for by the towboat company has application only to cases where the purchaser at the sale is one of the parties to the litigation, and the owner of, or having an interest in, the land or other tangible property involved, is apparent even under the Alabama decisions. McDonald v. Mobile Life Insurance Co., 65 Ala. 358, 362, a case later than that cited in support of the doctrine. The case of Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959, much relied upon by the towboat company, shows the same thing. See, especially, paragraph 9 of syllabus, and pages 355, 364, 373, and 374, of 18 Wall. (21 L. Ed. 959). The plaintiff in that case through his attorney purchased the property at the sale, and the Supreme Court first holding that the court making the decree of sale was without jurisdiction, and hence that the sale was invalid, further decided that such attorney having knowledge of the lack of jurisdiction, stood in the position of his client, and could not maintain title to the property because of such jurisdictional defects in the proceedings. The court, moreover, stated that under the laws of California a different rule prevailed between a purchase by strangers to the record and parties thereto, and that the Supreme Court of the United States in a case from California would follow the decisions of that state. This view taken by the court of the effect of a reversal of the decree authorizing a judicial sale upon a sale

made thereunder in the interim is supported almost by an unbroken line of authorities. Among cases of interest may be mentioned Wilson v. Hoffman (Chancery Court of New Jersey) 50 Atl. 592; Newbold v. Schlens et al. (Court of Appeals, Maryland) 66 Md. 585, 9 Atl. 849, 851; Benson v. Yellott et al., 76 Md. 159, 24 Atl. 451; Henninger v. Heald (N. J. Ch.) 52 N. J. Eq. 431, 29 Atl. 190, especially subdivisions 8 and 9, opinion page 193; Stewart v. Hoskins (Court of Appeals, Kentucky) 3 S. W. 128. In this last case a party purchased in the absence of a supersedeas bond, and even as to him the sale was held valid. The cases of Lenderking v. Rosenthal, 63 Md. 28, and Garritee v. Popplein, 73 Md. 322, 20 Atl. 1070, will also be found to discuss sales made in the absence of appeal bonds. See, also, Century Digest, 131, § 108, where cases generally will be found cited.

[3] Third. If the court is correct in this view as to the rights of these purchasers, it is conclusive of the relief asked now against them; but, assuming otherwise, should the court grant the same by ordering the institution of suit against McAllister Brothers to recover the tug John Twohy, Jr., with all the profits earned by said McAllister Bros from the time of the conveyance of said steamboat to them, in the light of the direction to this court from the appellate court "to proceed with the cause as may be proper, as its condition would then suggest and demand, and as the respective interests of the parties may require, in accordance with the opinion of the court herein," under the facts and circumstances of this case?

The original proposition before the court by the maker of the present motion made some 10 months ago was to sell the tugboat Twohy, because expensive to keep, and greatly deteriorating in value. A sale was had to the mover of the motion for $10,000. Subsequently, on motion of the government, which was largely to be affected by a sale at that price, it was set aside over the protest of the Lambert's Point Towboat Company; the latter insisting that the boat was not worth over $10,000. A second sale was had. The marshal announced that he would not take less than $10,000 for the boat, which amount, as stated in the petition for appeal in the record, the Lambert's Point Towboat Company was unwilling to bid under the then changed conditions, but it did make an offer of $5,000 to stand 48 hours. Later a private offer of $11,000 was made to the marshal by Messrs. Moss & Moss, and, after exhausting every effort to procure more from the Lambert's Point Towboat Company, the Moss offer was accepted, the bill of sale to the boat given by the marshal, and the amount paid into court, where it has since remained. Subsequently the boat was sold by them for $14,000, and that amount is likewise held in the National Bank of Commerce by agreement of the parties to await the outcome of the litigation. The government earnestly opposes the motion to institute the suit in question, and urges that the $11,000 be accepted, and the transaction closed. Now, ought the court under these conditions, over the protest of the government, the real party to be affected, and at the instance of the Lambert's Point Towboat Company, which has brought about all the confusion and trouble by at-

tempting in a litigation affecting the sale of perishable property to appeal, without giving a supersedeas bond, to now start out on a long, expensive, and, in the opinion of the court, fruitless, errand of recovering this property in a foreign court, with damages for the detention? It seems clear that it should not for many reasons, among them: (A) That the court believes no recovery under the law can be had. (B) That no court with the two sums of money afore mentioned held, namely, $25,000, would, as against the purchasers, or Moss & Moss, award any damages for the use and occupation of, or detention of, the boat, when the purchasers had paid down $14,000, the same being $4,000 more than the Lambert's Point Towboat Company said the boat was worth, and tried to acquire it for nearly a year ago. (C) Assuming that the boat at the end of the necessary litigation was recovered, the costs incident to such litigation would necessarily be very heavy, and in the result no real benefit would likely accrue to the fund. (D) That taking into account the hazards and delays incident to a lawsuit, and the probable and indeed almost inevitable deterioration in value of the boat pending such controversy, it would seem unbusinesslike in the extreme to embark upon the same, having regard to the court's experience in disposing of old vessel property generally, and this boat in particular, which the testimony of the Lambert's Point Towboat Company showed to have been constructed not of the most modern and substantial machinery, much of the same being secondhand, and some of it very old. (E) Sight should not be lost of the fact that the government, the chief party in interest, was satisfied with the sale to Moss & Moss, and at any new sale of the boat, should it be recovered, would find itself unable to contest with the Lambert's Point Towboat Company for the purchase thereof, and in all probability it might in that way be relegated from its present sale of $11,000, back to the last offer of the towboat company of $5,000. (F) That the court is without means to prosecute such a litigation, as it could not use the funds arising from the sale sought to be overthrown for such purpose, assuming the $11,000 should be held at all, if the litigation to recover the vessel back is to be embarked upon as requested.

For these and other reasons the court feels that it should decline to grant the request made of it, to direct the trustee to institute the litigation to recover this boat back; and it is further convinced that it is not among the probabilities, admitting the success of such litigation, that it would ever be enabled to realize in the future as much as $11,000 for the property, and a decree may be entered so declining.

This case was heard at great length on Wednesday, the 23d day of November, 1910, and, after a full and most interesting and elaborate argument, submitted to the court, as hereinbefore recited. Subsequently, late in the evening of Friday, November 25th, counsel for the Lambert's Point Towboat Company presented to the court a brief, or written argument, a new decree, along with a letter addressed to the judge by the Lambert's Point Towboat Company, a copy of which is embodied in and made a part of the new decree as

offered, and also a letter from counsel of the company, accompanying the same. While none of these last-named papers should have been presented, particularly the letter written by the towboat company to the judge, and embodied in and made a part of a proposed pleading in the cause, still, for the purpose of determining this case on its merits, the court will give consideration to the two suggestions made: First. That should the court see fit to enter a decree authorizing the trustee to demand posssession of the tug, and to sue for its recovery, with damages for its detention, that the Lambert's Point Towboat Company would pay the necessary cost and expenses of the litigation, to be finally refunded out of the fund at the disposal of the court in the limited liability proceeding. Second. That if as a result of the proceedings the boat was restored to the court, and subsequently offered for sale at public auction under the decree of this court, that the Lambert's Point Towboat Company would agree to start the sale with a bid of $10,000, and would file a formal stipulation or bond to that end. The "agreement to make this bid, however, is of course, conditioned on the idea that the boat at the time she is offered for sale is in as substantial and good a condition as she was on the 7th of April, 1910, the date of the last public auction sale." These two belated suggestions thus made to the court cannot, and should not, be accepted by it for the purpose of altering the conclusions hereinbefore announced. As to the first one, namely, that one of the parties litigant, the Lambert's Point Towboat Company, would advance to the court money upon the condition that it should be thereafter refunded to it out of the fund, instead of the court taking it out itself, would be an unnecessary circumlocution, as the court could as well take it out of the fund in the start, and thereby avoid being placed under obligation to a party litigant. The weakness of the second proposal, and the folly of the court's accepting and acting upon it, is manifest. The offer to bid $10,000 at another sale is made conditional upon the property at the end of a lawsuit, which would reasonably take a year at least, being worth then as much as it was worth some nine months ago. Now, who would determine this, and besides, in the nature of things, we know in advance that there would necessarily be depreciation, especially of property that the court, nearly a year ago, at the instance of the same company, ordered to be sold because the same was then greatly deteriorating in value. Start the sale, however, at $10,000, the fund would be minus $1,000, plus the cost of the new litigation, which would in all probability be another $1,000.

THE IOLA.

(District Court, S. D. Georgia, E. D. September 22, 1911.)

1. SHIPPING (§ 56*)—CHARTER PARTY—CONSTRUCTION.
    Where a charter party hiring a small tug and barges for inland harbor improvement work provided that the property was hired to be used by an engineering company for engineering and construction work in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes