223 U.S. 376 (1912)
CUEBAS Y ARREDONDO
v.
CUEBAS Y ARREDONDO.
No. 159.
Supreme Court of United States.
Submitted January 24, 1912.
Decided February 19, 1912.
APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR PORTO RICO.
*381 Mr. Frederick L. Cornwell and Mr. N.B.K. Pettingill, for appellant.
No brief filed for appellees.
Mr. F. Kingbury Curtis and Mr. Henry A. Stickney, by leave of the court, filed a brief as amici curiae on behalf of Banco Territorial y Agricola.
*385 MR. JUSTICE LURTON, after stating the facts as above, delivered the opinion of the court.
The bank is not a party to this appeal. The appellant has elected to dismiss her bill, both as to it and the other Porto Rican defendant, Antongiorgi, for the express purpose of creating jurisdiction of a suit between complainant, a citizen of the Island of Porto Rico, and the remaining original defendant, Felipe Cuebas, a citizen of the United States. Her bill, as amended, contains no reference to the bank, or even of its existence. It was the bill, as thus amended, which was dismissed by the court. We mention this because two of the errors assigned and argued in the brief of counsel for appellant relate to the action of the court, first, in holding that the bank was in law a citizen of Porto Rico, and, second, in holding that, that being so, the jurisdiction of the court to maintain the suit, with citizens of Porto Rico, on both sides of the case, would be defeated. The action of the court in respect to the matter first mentioned is not here for review, and the other only in so far as it may become necessary to deal with it for the purpose of determining the force and effect to be given to the decree pro confesso against Felipe Cuebas.
It was not error in the situation of this case to deny a final decree against the succession of Felipe Cuebas upon the foundation of the pro confesso order made on a rule day five years theretofore. When that pro confesso was *386 taken against Cuebas the suit was one of which the District Court had no cognizance. The sole complainant was a citizen of Porto Rico, and Cuebas was a citizen of the United States and therefore subject to be sued in that court by the complainant, if the citizenship of the other persons on the same side was such as not to defeat jurisdiction. But that was not the case. One of them, Francisco Antongiorgi, was alleged in the bill to be a citizen of the Island of Porto Rico. The other defendant, the bank, was averred to be a corporation organized under the laws of Spain and a citizen thereof. But later, as we have already stated, the bank's plea that it was a corporation under the laws of Porto Rico and a citizen of Porto Rico was sustained. The case was, then, one which, upon the face of the bill, showed that one of the defendants had a citizenship common with that of the complainant, and later it turned out that a second had a like citizenship.
It is not and cannot be claimed that the complainant's bill asserted any right, title or claim arising under the laws or Constitution of the United States. If, therefore, the District Court had jurisdiction, it must depend upon diversity of citizenship alone.
It is claimed that the fact that one of the three defendants was a citizen of the United States conferred jurisdiction, although the other two were Porto Ricans, with a citizenship identical with that of the complainant. That this would not have been so under the Foraker act of 1900 is conceded. That act gave to the District Court for Porto Rico the jurisdiction of the United States District Courts, and added to that the jurisdiction of cases cognizable in Circuit Courts of the United States. The contention is that this extraordinary stretch of jurisdiction is conferred by the third section of the act of March 2, 1901, c. 812, 31 Stat. 953. That section reads as follows:
*387 "That the jurisdiction of the district court of the United States for Porto Rico in civil cases shall, in addition to that conferred by the Act of April twelfth, nineteen hundred, extend to and embrace controversies where the parties, or either of them, are citizens of the United States, or citizens or subjects of a foreign State or States, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of one thousand dollars."
Shortly stated, the construction placed upon this section is, that the word "parties" is not used collectively, meaning all of the litigants on the one side or the other, but is intended as if the word "litigants" had been used, and that the words "or either of them" means "any of them," and that the jurisdiction conferred embraces all controversies in which any litigant on either side is a citizen of the United States or a subject of a foreign country.
The construction contended for is out of accord with that placed upon the act in Vallecillo v. Bertran, 2 P.R. Fed. Rep. 46, a construction constantly adhered to by the court below since 1906. It is also a construction out of harmony with a long line of decisions of this court construing the jurisdictional clauses in the various statutes dealing with the question of jurisdiction dependent upon diversity of citizenship. The first of the decisions referred to involved the meaning of the clause in the Judiciary Act of 1789, conferring jurisdiction over controversies "where an alien is a party, or the suit is between a citizen of a State where the suit is brought and a citizen of another State." The question arose in Strawbridge v. Curtiss, 3 Cranch, 267, whether it was essential to jurisdiction that all of the parties on one side should have a citizenship different from that of all of the parties on the other. In that case the complainants were citizens of Massachusetts and some of the defendants were citizens of the same State. But one of the defendants was a citizen *388 of Vermont, and this fact was claimed to give jurisdiction. To this, the court, by Chief Justice Marshall, said:
"The court understands these expressions to mean, that each distinct interest should be represented by persons, all of whom are entitled to sue, or may be sued, in the federal courts. That is, that where the interest is joint, each of the persons concerned in that interest must be competent to sue, or liable to be sued, in those courts."
This construction of that clause and of like words in later statutes, concerning jurisdiction dependent upon diversity of citizenship has been followed in many cases, among them being Coal Co. v. Blatchford, 11 Wall. 172, and Smith v. Lyon, 133 U.S. 315. In the case first referred to Mr. Justice Field stated the matter in words quite as applicable here, by saying: "If there are several co-plaintiffs, the intention of the act is that each plaintiff must be competent to sue, and if there are several co-defendants each defendant must be liable to be sued, or the jurisdiction cannot be sustained."
In view of these decisions we should be slow to conclude that Congress intended any other rule as to the arrangement of the parties where diversity of citizenship is the basis of jurisdiction than that laid down in construing like statutes upon the same subject. The contention that from the evident intention of Congress to enlarge the jurisdiction of the court we should infer an intent to confer jurisdiction to the extent claimed is without merit. Congress, in very plain words, did extend the jurisdiction, first, by cutting down the necessary jurisdictional amount to one thousand dollars, and second, by dispensing with diversity of state citizenship. United States citizenship is substituted for diverse state citizenship.
We, therefore, conclude that the court had no jurisdiction of this cause when the pro confesso order was entered against Felipe Cuebas.
*389 The final decree following a pro confesso order is only such a decree as would be authorized by the state of the pleadings when the order was entered. Frow v. De La Vega, 15 Wall. 552; Daniel's Chancery Pl. & Pr., pp. 525-528, 5th ed., and notes; Simmonds v. Palles, 2 Jones and La Touche's 489; Hardwick v. Bassett, 25 Michigan, 149; McDonald v. Mobile Life Ins. Co., 56 Alabama, 468. If the bill was fatally defective upon its face, showing that the court had no jurisdiction, it was error to allow a pro confesso, and upon the court's attention being called to it, it should have vacated the order and allowed the defaulting defendant to defend. Nelson v. Eaton, 66 Fed. Rep. 376; Blythe v. Hinckley, 84 Fed. Rep. 228, 244; Eldred v. Am. Palace Car Co., 103 Fed. Rep. 209.
That the bill was subsequently amended so as to confer jurisdiction against Cuebas as sole defendant, by dismissing the bill against the other two defendants and striking out the prayer of the bill that any and every claim, interest, or incumbrance be forever barred and cut off, did not justify a decree based upon the order pro confesso made prior thereto. Upon such amendment being made, so completely changing the character of the bill, creating a jurisdiction which had not theretofore existed, the court should have set aside the default and given time to defend.
But the allowance of a final decree nunc pro tunc would have been still more inadmissible. Cuebas had been then dead for, apparently, some years. There had been no revivor. If there had been his representatives would doubtless have moved to vacate the pro confesso decree upon the ground suggested, and it would have been error to have denied that motion. The motion to enter a decree as of a day before his death would, if allowed, have been fruitless, for it would bear a date antecedent to the acquirement of jurisdiction, and therefore erroneous, if of any validity.
*390 But no decree nunc pro tunc was admissible. Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court; or a decree in a cause which is under advisement when the death of a party occurs. Mitchell v. Overman, 103 U.S. 62. There is no claim that a final decree in pursuance of the allegations of the bill had ever been directed and through inadvertence of either court or counsel omitted from entry. There was, therefore, no authority for a decree nunc pro tunc upon any known ground of equity procedure. Gray v. Brignardello, 1 Wall. 627.
No effort to revive the cause against the succession of Cuebas was at any time made. The complainant stood upon her right to a final decree nunc pro tunc. When this was denied she still made no effort to revive the cause, though Cuebas had been dead a long time. It was not error in such circumstances to dismiss the bill.
Decree affirmed.